01
02
03
04

05                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
06                              AT SEATTLE

07  MARTIN A. MERRIGAN,              )  CASE NO. C07-0335-RSM
                                     )
08          Plaintiff,                )
                                     )
09          v.                        )  REPORT AND RECOMMENDATION
                                     )  RE: SOCIAL SECURITY
10  MICHAEL J. ASTRUE,               )  DISABILITY APPEAL
    Commissioner of Social Security, )
11                                    )
            Defendant.                 )
12  _____ )

13      Plaintiff Martin A. Merrigan proceeds through counsel in his appeal of a final decision of

14  the Commissioner of the Social Security Administration (Commissioner). The Commissioner

15  denied plaintiff's application for Disability Insurance (DI) benefits after a hearing before an

16  Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record

17  (AR), and all memoranda of record, it is recommended that this matter be REMANDED for an

18  award of benefits.

19                        **FACTS AND PROCEDURAL HISTORY**

20      Plaintiff was born on XXXX, 1954.[1]  He has a General Equivalency Degree and previously

21  _____

22      [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

worked as a retail salesperson and laborer.

Plaintiff filed an application for DI benefits in June 2000, alleging disability since December 15, 1993. (AR 103-05.) Because his insured status for DI benefits expired as of December 31, 1998, he is required to show disability as of that date last insured (DLI). *See* 20 C.F.R. §§ 404.131, 404.321. His application was denied initially and on reconsideration, and he timely requested a hearing. ALJ Arthur Joyner held a hearing on August 8, 2001, taking testimony from plaintiff and medical and vocational experts. (AR 32-82.) ALJ Joyner issued a decision finding plaintiff not disabled on October 2, 2001. (AR 15-24.)

Plaintiff timely appealed to the Appeals Council, which denied review. (AR 6-7.) Following an appeal to this Court, the parties stipulated to a remand for further administrative proceedings. (AR 639-46.)

On June 7, 2005, plaintiff appeared for a supplemental hearing with ALJ Joyner. (AR 827-58.) ALJ Joyner also took testimony from medical expert Dr. Allen Bostwick, medical expert Dr. Douglas Smith, and vocational expert Leta Berkshire. ALJ Joyner issued a second decision finding plaintiff not disabled on October 19, 2005. (AR 625-38.) He noted in the decision that, based on an application for Supplemental Security Income (SSI) benefits, plaintiff was found disabled beginning October 1, 2001. (AR 625.)

The Appeals Council denied plaintiff's request for review as to DI benefits on November 1, 2006 (AR 614-17), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

---

official policy on privacy adopted by the Judicial Conference of the United States.

**JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since his alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's sprains and strains, degenerative disc disease of the lumbar and cervical spine, depression NOS and personality disorder NOS severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal the criteria for any listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to lift and carry ten pounds occasionally and less than ten pounds frequently; able to stand and/or walk for four hours in an eight hour day with a sit-stand option; able to sit six hours in an eight hour day with a sit-stand option; unable to use ropes, ladders, or scaffolds or to be around heights or hazards; able to occasionally climb stairs, kneel, crouch, or crawl; unable to work with the public; requiring limited contact with co-workers and limited supervision; and able to perform detailed but not complex tasks in a low stress work place without a lot of changes in demand and fairly independent work. With this RFC, the ALJ found plaintiff unable to perform his past relevant

work.

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. Considering the testimony of the vocational expert, the ALJ found plaintiff capable of performing a significant number of jobs, including work as an assembler or solderer, both of which he identified as sedentary, unskilled work.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues that the ALJ erred in failing to find his somatoform disorder severe, in failing to properly credit the opinions of two treating physicians and the opinion of medical expert Dr. Bostwick that he met a listing at step three, and in failing to inquire as to the consistency of the vocational expert's testimony with the Dictionary of Occupational Titles. [2] He requests a

---

[2] Plaintiff initially argued that the ALJ erred in failing to obtain records from the Department of Veteran Affairs, but conceded in reply that the receipt of veterans' benefits was not an issue.

remand for an award of benefits. The Commissioner agrees that this matter should be remanded, but argues that further administrative proceedings are necessary to allow for reevaluation of the medical evidence and additional vocational expert testimony.

The Court has discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari* 298 F.3d 1072, 1076 (9th Cir. 2002).

> Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77. In this case, the Court finds remand for an award of benefits appropriate.

## Step Two

At step two, a claimant must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id*. (citing *Bowen*, 482 U.S. at 153-54). An ALJ is also required to consider the "combined effect" of an individual's impairments in considering severity. *Id*.

01    Plaintiff contends that the ALJ erred in failing to identify his somatoform disorder as severe
02 at step two.  He notes that the ALJ identified this disorder as severe in the first decision (AR 19)
03 and asserts the absence of any explanation why the ALJ, in the second decision, apparently no
04 longer considered this condition severe.  He also points to, *inter alia*, the medical opinions of
05 examining physician Dr. Henriksen (AR 229) and the state reviewing physicians (AR 495, 505,
06 517) as supportive of a severe somatoform disorder, as well as medical expert Dr. Bostwick's
07 identification of a somatoform disorder in the second hearing (AR 832-33).  (*See also* AR 19
08 (indicating that the medical expert in the first hearing assessed plaintiff with a somatoform
09 disorder).)

10    The Commissioner argues that further proceedings are necessary to evaluate the medical
11 evidence regarding the existence of a somatoform disorder.  He asserts that no treating or
12 examining medical source actually diagnosed a somatoform disorder.  *See Ukolov v. Barnhart*,
13 420 F.3d 1002, 1006 (9th Cir. 2005) ("Indeed, SSR 96-6p provides that a medical opinion offered
14 in support of an impairment must include 'symptoms [and a] *diagnosis*.'  Because none of the
15 medical opinions included a finding of impairment, a diagnosis, or objective test results, Ukolov
16 failed to meet his burden of establishing disability.") (internal citation omitted; emphasis in
17 original.)  The Commissioner argues that, while three non-examining physicians did diagnosis
18 plaintiff with a somatoform disorder, their opinions by themselves do not suffice to establish the
19 diagnosis.  *See Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996) ("In the absence of record
20 evidence to support it, the nonexamining medical advisor's testimony does not by itself constitute
21 substantial evidence that warrants a rejection of either the treating doctor's or the examining
22 psychologist's opinion.")

01       The Commissioner accurately notes the absence of a clear diagnosis of a somatoform

02 disorder from several physicians. *See*, *e.g.*, AR 229 (Dr. Henriksen stated in a July 24, 1996

03 report: "He also shows some elements of a somatoform disorder, with subjective complaints far

04 in excess of the objective physical findings, but in my opinion these simply represent one facet of

05 his pre-existing underlying personality disorder noted on Axis II.")) However, there is sufficient

06 evidence in the record to have warranted a discussion as to the severity of this condition. Contrary

07 to the Commissioner's argument, the ALJ must consider the opinions of the state reviewing

08 physicians. *See* SSR 96-6p ("Because State agency medical and psychological consultants . . . are

09 experts in the Social Security disability programs, the rules in 20 CFR 404.1527(f) and 416.927(f)

10 require administrative law judges and the Appeals Council to consider their findings of fact about

11 the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians

12 and psychologists. [While not bound by them,] they may not ignore these opinions and must

13 explain the weight given to the opinions in their decisions.") Also, although perhaps not grounded

14 in a specific diagnosis from a treating or examining physician, Dr. Bostwick did testify as to his

15 belief that this condition should be considered at step three. (AR 832-33.) Finally, the ALJ's

16 previous identification of this condition as severe serves as an additional reason to warrant at least

17 a discussion in the second decision.

18                               <u>Physicians' Opinions</u>

19       In general, more weight should be given to the opinion of a treating physician than to a

20 non-treating physician, and more weight to the opinion of an examining physician than to a non-

21 examining physician. *Lester*, 81 F.3d at 830. Where not contradicted by another physician, a

22 treating or examining physician's opinion may be rejected only for "'clear and convincing'"

reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

"Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'" *Lester*, 81 F.3d at 830-34 (finding that, if doctors' opinions and plaintiff's testimony were credited as true, plaintiff's condition met a listing) (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989)). Crediting an opinion as a matter of law is appropriate when, taking that opinion as true, the evidence supports a finding of disability. *See*, *e.g.*, *Schneider v. Commissioner of Social Sec. Admin.,* 223 F.3d 968, 976 (9th Cir. 2000) ("When the lay evidence that the ALJ rejected is given the effect required by the federal regulations, it becomes clear that the severity of [plaintiff's] functional limitations is sufficient to meet or equal [a listing.]"); *Smolen*, 80 F.3d at 1292 (ALJ's reasoning for rejecting subjective symptom testimony, physicians' opinions, and lay testimony legally insufficient; finding record fully developed and disability finding clearly required).

However, courts retain flexibility in applying this "'crediting as true' theory." *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether plaintiff's testimony should be credited as true). As stated by one district court: "In some cases, automatic reversal would bestow a benefits windfall upon an undeserving, able claimant." *Barbato v. Commissioner of Soc. Sec. Admin.*, 923 F. Supp. 1273, 1278 (C.D. Cal. 1996) (remanding for further proceedings where the ALJ made a good faith error, in that some of his stated reasons for rejecting a physician's opinion were legally

insufficient).

A.  Dr. Will Swanke

Plaintiff first argues that the ALJ failed to properly credit the opinions of treating physician Dr. Will Swanke. The ALJ assessed Dr. Swanke's opinions as follows:

> Will Swanke, M.D., began treating the claimant in May 1996. At that time the claimant had suicide ideation. Dr. Swanke diagnosed major depression NOS with a Global Assessment of Functioning of 30 to 40. In August 1996 Dr. Swanke protested the psychiatric IME performed in July 1996 by Dr. Hendriksen [sic]. He based the protest on several psychiatric and psychological reports and concluded that the claimant met the criteria for a diagnosis of depressive disorder. Dr. Swanke commented that the claimant was on imipramine and was starting to show some change in his depressive symptoms. I have closely reviewed Dr. Swanke's opinion and underlying support in the record. While he is entitled to some deference due to his treating physician status, I find that much of the opinion is based upon the claimant's recitation of symptoms and history. Since my review of the evidence and my observation of the claimant in two hearings leads to the conclusion that his testimony regarding the existence and severity of his symptoms is very exaggerated, I cannot give Dr. Swanke's conclusion that the claimant is disabled more than little weight.

(AR 630 (internal footnote and citation to record omitted).)

Plaintiff acknowledges that observations, so long as they do not amount to a "sit and squirm test", can be a valid reason for discrediting a plaintiff's credibility. *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). However, he notes that the ALJ did not explain what observations at the hearing supported his conclusion to give little weight to the opinions of Dr. Swanke. He also points to the consistency of Dr. Swanke's opinion with that of Dr. Bostwick at the hearing. (AR 833 (Dr. Bostwick testified as to his belief that plaintiff met the requirements for Listing 12.04, affective disorders).)

The Commissioner asserts that the ALJ appropriately discredited the opinions of Dr. Swanke as based primarily on plaintiff's recitation of his symptoms and history. *See Morgan v.*

*Commissioner of the Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) ("A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'") (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).) *See also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("The ALJ rejected Dr. Ngaw's opinion for lack of objective support, noting that Dr. Ngaw relied only on Tonapetyan's subjective complaints and on testing within Tonapetyan's control. Because the present record supports the ALJ in discounting Tonapetyan's credibility, as discussed above, he was free to disregard Dr. Ngaw's opinion, which was premised on her subjective complaints.") He notes that plaintiff did not raise a challenge to the ALJ's credibility finding in his opening brief, and that "[c]redibility determinations do bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and his diagnosed conditions." *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005). The Commissioner also notes that, on April 21, 1999, Dr. Swanke stated that plaintiff "can return to work . . . in the area of computers where he can work at his own pace, manage his pain as he is able to, as well as manage his depression and anger[,]" and that the ALJ accommodated the pace restrictions in the RFC, with limitations to non-complex, low stress, and independent work without changes in demand (AR 635).

   The Court does not find the ALJ's reference to his observations at the two hearings persuasive given his failure to elaborate as to those observations and the fact that both hearings took place well after plaintiff's December 31, 1998 DLI, the first in August 2001 and the second in June 2005. Also, as noted by plaintiff in reply, the April 1999 report from Dr. Swanke merely reflected his opinion that plaintiff should be retrained for computer programming. (AR 454.) Dr.

Swanke reiterated his recommendation in his subsequent, July 1999, report, in which he added: "Treatment of his depression is a medical necessity at this point as the patient continues to have significant suicide ideation and plans. Marty's depression is work-related. Psychiatric care is also seen as an aid to recover to return to work full-time. . . . " (AR 450-53.) Also, the Commissioner, not the ALJ, pointed to this report.

As argued by the Commissioner, an ALJ may discount a physician's opinion as based on a claimant's subjective complaints, to the extent the ALJ supports his or her credibility finding. Plaintiff contends that he did challenge the ALJ's credibility finding in arguing that the ALJ failed to articulate what observations led him to discredit plaintiff. He then raises a specific challenge to the ALJ's credibility finding, namely, that the ALJ inappropriately discredited his testimony as to subjective symptoms merely because of a lack of objective evidence. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (an ALJ may not reject subjective pain testimony based solely on a lack of objective evidence fully corroborating the alleged severity of the pain); *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (same). However, plaintiff's argument as to the ALJ's observations was directed at the reasoning provided with respect to Dr. Swanke; they are not fairly read as a separate credibility argument. (*See* Dkt. 9 at 14 ("However, here the ALJ does not explain what observations of plaintiff at the hearing supported his finding that Dr. Swanke's opinion should not be given the full weight it deserves.")) Nor does plaintiff demonstrate that the ALJ rejected his pain testimony based solely on a lack of supporting objective evidence. Instead, the ALJ provided several reasons for discounting plaintiff's credibility, including his minimal work history, the references in the record to his exaggerated pain behaviors during exams, and numerous references in the record to activities inconsistent with plaintiff's allegations of disabling pain. (AR

632-34.) As such, the ALJ's decision to discount Dr. Swanke's opinions as based on plaintiff's subjective complaints serves as a specific and legitimate reason. *See Morgan*, 169 F.3d at 602; *Tonapetyan*, 242 F.3d at 1149.

Although the ALJ's credibility assessment and assessment of Dr. Swanke's opinions withstand scrutiny, the Court notes that a consideration of a somatoform disorder could implicate either assessment if this matter were remanded for further administrative proceedings. A somatoform disorder is particularly relevant to the credibility assessment given that the ALJ did, in part, point to the lack of objective findings. (AR 633 ("The claimant's physical condition was basically a 'pain disorder' with no objective findings for his complaints of extreme pain. Dr. Smith testified that during the period of insured status the objective findings are very limited and the pain complaints are non-anatomical. The record contains many references to the claimant's exaggerated pain behaviors during exams and his non-anatomical pain complaints."))

B.      Dr. Allen Bostwick

Medical expert Dr. Allen Bostwick testified at the second hearing his opinion that plaintiff met the criteria for Listing 12.04, affective disorders, for the period between December 1993 and December 1998. ( *See* AR 831-38.) [3] The ALJ described and assessed the opinions of Dr. Bostwick as follows:

---

[3] Dr. Bostwick stated his belief that plaintiff "met the listings under 1204[,]" and assessed marked limitations in two of the "B" criteria as required for Listing 12.04. (AR 833-34 (stating that, although typically moderate, plaintiff had a marked limitation in social functioning "when he is fatigued, more stressed, or experiencing increased pain[]"; finding concentration, persistence, or pace as ranging from moderate to marked, and adding: "Again, in a worklike setting he's certainly not going to persist on an activity because of chronic pain, stress, and fatigue."; and noting no record of episodes of decompensations of extended duration, but stating: "But I would expect repeated decompensations in a worklike setting."))

> At the hearing, Dr. Bostwick testified that the claimant had a life-long history of psychiatric maladjustment. He had a conduct disorder and long-term history of fighting and had spent some five years in jail. In 1992 he developed a pain disorder and a year later he developed depression. He had an exacerbation of his mental health condition with lack of ability to control his behavior and personality style. Dr. Bostwick noted diagnoses of major depressive disorder, pain disorder, mixed personality disorder and antisocial, borderline, narcissistic and impulsive personality traits. Dr. Swanke had treated the claimant from May 1996 to 2000. Dr. Bostwick also noted a diagnosis of post traumatic stress disorder in the records but opined that it was not supported. The PTSD diagnosis seemed to be predicated on the claimant's reports of childhood trauma but there were no classic symptoms of PTSD.
>
> Dr. Bostwick further testified that the claimant's impairments met the severity criteria of mental listing 12.04. He opined that the claimant had moderate limitations in social functioning, inability to persist because of pain, and that he would expect repeated episodes of decompensation in work like settings. (However, I find little support for this conclusion in the record.) He testified that Dr. Swanke's notes refer to the claimant's anger and rage and not being able to work around others mostly because of anger and rage. While Dr. Bostwick's opinion may well be accurate if viewed as an assessment of the claimant's condition overall, during the entire period of disability, I find it unsupported by the weight of the evidence during the pre-DLI period.
>
> I do not accept Dr. Bostwick's opinion that the claimant's psychiatric diagnoses meet the severity criteria of the mental listings. The record simply does not show the claimant having psychiatric symptoms to a disabling degree through December 1998. He was treated for depression and anger and diagnosed with a personality disorder, but there is very little to show that he was unable to perform. I find Dr. Hamm's thorough evaluation to be significantly more persuasive and better supported and therefore give it significant weight.

(AR 631-32.)

Plaintiff criticizes the ALJ's rejection of Dr. Bostwick's testimony based on the ALJ's belief that the record did not support the existence of disabling impairments through December 1998. He notes that that was the only issue at the hearing and that the ALJ specifically clarified that his questions for Dr. Bostwick related to the relevant time period. (AR 831 (The ALJ asked: ". . . I'm specifically concerned initially with the period between 12/93 and 12/98. . . . Could you

give me your impressions of the Claimant's - - your opinion of the Claimant's impairments during that time period?"))

The Commissioner acknowledges the ALJ's failure to mention the fact that he had specifically focused Dr. Bostwick's testimony on the relevant time period. He also recognizes that the ALJ failed to discuss Dr. Bostwick's explanation that the evaluations in the record assessed only conditions related to plaintiff's industrial accident, but not unrelated conditions. (*See* AR 835-36.) At the same time, the Commissioner asserts that the ALJ's determination that examining physician Dr. Hamm's opinion was better supported and the ALJ's conclusion that Dr. Bostwick's statements were not supported by the record constituted specific and legitimate reasons for rejecting the opinions. He avers that further proceedings would allow for additional development and greater articulation of what the evidence reveals, and that a finding of disability at this point would result in the Court improperly resolving the conflict between the opinions of non-examining physician Dr. Bostwick and examining physician Dr. Hamm.

In reply, plaintiff asserts that, given the errors as conceded by the Commissioner, Dr. Bostwick's opinion should be credited as true and benefits awarded based on his opinion that plaintiff was disabled at step three. Plaintiff also asserts that, without further elaboration, neither the ALJ's statement that "[t]he record simply does not show the claimant having psychiatric symptoms to a disabling degree through December 1998[]" or his assertion that "Dr. Hamm's thorough evaluation [is] significantly more persuasive and better supported" constitute specific and legitimate reasons for discrediting Dr. Bostwick's testimony.

Because Dr. Bostwick was a non-examining physician, there is no basis for crediting his opinion as true. However, his testimony would require further assessment if this matter were

SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

01 remanded for further administrative proceedings, including clarification as to why the ALJ found

02 the opinion unsupported as to the relevant time period, despite the fact that Dr. Bostwick

03 specifically testified as to that time period, and a discussion of Dr. Bostwick's testimony as to the

04 fact that many of the evaluations during the relevant time period related to plaintiff's industrial

05 accident (AR 835-36). On the other hand, it was not inappropriate for the ALJ to point to the

06 contrary opinions of Dr. Hamm. The ALJ had previously discussed Dr. Hamm's findings (AR

07 631), Dr. Hamm examined plaintiff during the relevant time period, and the opinions of examining

08 physicians are appropriately accorded more weight than those of non-examining physicians.

09 C.     Dr. Steven Creelman

10        Plaintiff also challenges the ALJ's consideration of the opinions of treating physician Dr.

11 Steven Creelman. The ALJ discussed Dr. Creelman's treatment as follows:

12    Steven Creelman, M.D., has been treating the claimant since 1996. On the first visit, the claimant told Dr. Creelman he felt that retraining in sales management would "provide an ability to work without overtaxing his back." Dr. Creelman treated the claimant for chronic back pain and degenerative disc disease of the cervical spine. In June 1997 Dr. Creelman suggested that the claimant suffered a cervical compression secondary to the L & I injury. The treatment notes reflect some issues with pain medications and in August 2000 Dr. Creelman reported that he had severely restricted the use of medication for several years. [In June 2001 Dr. Creelman provided a description of limitations that support a finding of disability. However, he did not refer those limitations back to the period of the claimant's insured status.]

18 (AR 628; internal citations to record omitted and footnoted text bracketed.)

19        Plaintiff argues that the ALJ had a duty to develop the record on the issue of whether Dr.

20 Creelman's June 2001 opinions related back to the relevant time period. *See Hilliard v. Barnhart*,

21 442 F. Supp. 2d 813, 817 (N.D. Cal. 2006) (discussing ALJ's independent duty to develop the

22 record triggered by ambiguous or inadequate evidence). He asserts that, in this case, a simple

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

01 interrogatory to Dr. Creelman would have allowed for clarification. The Commissioner does not
02 specifically respond to this argument, but avers that further proceedings would allow for
03 development of the record regarding Dr. Creelman's opinions.

04 An ALJ has an obligation to recontact a treating physician or psychologist when the
05 evidence received is inadequate for a determination of disability. 20 C.F.R. § 404.1512(e) ("When
06 the evidence we receive from your treating physician or psychologist or other medical source is
07 inadequate for us to determine whether you are disabled, we will need additional information to
08 reach a determination or a decision.") *See also Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th
09 Cir. 2006) ("[T]he ALJ should not be 'a mere umpire' during disability proceedings. Rather, the
10 ALJ has 'a special duty to fully and fairly develop the record and to assure that the claimant's
11 interests are considered.'") (quoted sources omitted); *Tonapetyan*, 242 F.3d at 1150 ("Ambiguous
12 evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation
13 of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'") (quoted source
14 omitted). The "ALJ's duty to develop the record further is triggered only when there is
15 ambiguous evidence or when the record is inadequate to allow for proper evaluation of the
16 evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

17 The evidence from Dr. Creelman was ambiguous and the ALJ should have contacted him
18 for clarification as to whether his June 2001 opinions related back to the relevant time period.
19 Therefore, if this matter were remanded for further proceedings, Dr. Creelman's opinions would
20 have required clarification.

21 <u>Vocational Expert's Testimony</u>

22 The Dictionary of Occupational Titles (DOT) raises a rebuttable presumption as to job

classification. *Johnson v. Shalala*, 60 F.3d 1428, 1435-36 (9th Cir. 1995). Pursuant to SSR 00-4p, an ALJ has an affirmative responsibility to inquire as to whether a vocational expert's (VE) testimony is consistent with the DOT and, if there is a conflict, determine whether the VE's explanation for such a conflict is reasonable. *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007). As stated by the Ninth Circuit Court of Appeals: "[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435-36 (VE testified specifically about the characteristics of local jobs and found their characteristics to be sedentary, despite DOT classification as light work). *See also Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("We merely hold that in order for an ALJ to rely on a job description in the [DOT] that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation.")

In this case, the ALJ did not inquire as to whether the VE's testimony was consistent with the DOT. (*See* AR 855-57.) Also, while the ALJ found plaintiff limited to less than light work (AR 635), the jobs identified by the VE as sedentary, and relied on by the ALJ in his decision, are both classified as light work in the DOT. *See* DOT 706.684-022 (assembler, small product) and DOT 813.684-022 (solderer, production line). There was no reasonable explanation for or persuasive evidence to support this deviation.

The Commissioner avers that a reasonable explanation for the deviation may be found. *See Massachi*, 486 F.3d at 1153 n.17 ("SSR 00-4p gives examples of several reasonable explanations for deviating from the Dictionary. Among them are that the Dictionary does not provide information about all occupations, information about a particular job not listed in the Dictionary may be available elsewhere, and the general descriptions in the Dictionary may not apply to

specific situations.") He maintains that further proceedings are necessary to determine whether plaintiff could perform the jobs identified despite their characterization as light work in the DOT. He also notes that the VE was not specifically asked to identify sedentary jobs, but, rather, was given the specific functional limitations and abilities the ALJ assessed. (*See* AR 855-56.) He asserts that, had the ALJ asked whether the VE's testimony deviated from the DOT, the VE likely would have explained the deviation.

Clearly, the ALJ erred in failing to affirmatively ask whether the VE's testimony departed from the DOT. It was not apparent that he was testifying to a deviation in that he stated that the exertional level for each job identified "is sedentary." (AR 856.) Accordingly, if this matter were remanded for further administrative proceedings, the ALJ would be required to obtain additional VE testimony, to affirmatively ask whether the testimony proffered is consistent with the DOT, and, if not, to seek an explanation for any deviation.

However, the Court concludes that the errors at step five support an award of benefits. The Commissioner bore the burden at step five to demonstrate that plaintiff retains the capacity to make an adjustment to work that exists in significant levels in the national economy. He failed to meet that burden; his step five finding lacks the support of substantial evidence in the record as a whole. That plaintiff has already waited over seven years for this disability determination, that this matter has already been once remanded, and that additional proceedings would pose further delay, additionally weigh in favor of an award of benefits. *See Smolen*, 80 F.3d at 1292 (noting seven-year delay and additional delay posed by further proceedings); *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985) (noting administrative proceedings would only prolong already lengthy process and delay benefits).

## **CONCLUSION**

For the reasons set forth above, this matter should be REMANDED for an award of benefits.

DATED this 2nd day of November, 2007.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -19